[Crim. No. 8212. Second Dist., Div. Four. Jan. 4, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. LEON J. MILLER, Defendant and Appellant.

Gould & Aronson and Paul Augustine, Jr., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—An information was filed by the District Attorney of Los Angeles County charging defendant and codefendant, Gene Evans, with violation of section 211 of the Penal Code, robbery. The information further alleged that defendants were armed with a deadly weapon at the time of the commission of the robbery. Defendants entered pleas of not guilty. The jury spent three days in deliberation before returning their verdict. They were unable to arrive at a verdict as to codefendant, Gene Evans; but a verdict was returned finding defendant guilty of the offense charged, and further that he was armed with a deadly weapon at the time of the commission of the offense thus finding the robbery to be in the first degree. Motion for new trial and probation were denied, and defendant was sentenced to state prison for the term prescribed by law. This is an appeal from the judgment of conviction.

The manager of the Thriftimart Market in La Mirada testified that at about 9:40 p. m. on July 6, 1961, he observed two men whom he had never seen before in the shopping area of the market. He testified that he recognized the same two

persons present in court. He identified them as Roland Comtois, who was seated in the rear of the courtroom, and defendant, who was seated at the counsel table. He testified that Roland Comtois followed him into a back room of the market; pulled a gun; directed him to the office; demanded that he put all the money in bags, and left the back room with two bags of money, containing approximately $12,075. From the back room of the market, the manager observed Comtois hand one bag to defendant who was standing near the checkstand, and the two men left the market together. Four weeks later the manager identified Comtois in a police lineup. The first time he saw defendant after the robbery was at the preliminary hearing. He stated that to the best of his recollection defendant wore a dark blue suit, a tie, but no hat.

Margo Gibson testified that as she was leaving the market on a bicycle at around 9:30 p.m. on July 6, 1961, she observed Roland Comtois as he passed beside her with a gun in his hand, and he told her to keep riding. She saw defendant some 30 feet away on the parking lot as he fell down momentarily; he was wearing a dark suit, shirt and tie. She testified that she was taken to a lineup which consisted of four men. Roland Comtois was one of the men she saw in the lineup but she was positive that neither defendant nor Gene Evans were in the lineup. This contradicted her testimony at the preliminary hearing wherein she testified that the lineup consisted of only the three suspects: Comtois, Evans, and defendant.

Kenneth Harp, another witness for the People, testified that at the time of the robbery he saw defendant, whom he identified, and another man enter the market and walk towards the back of the store; defendant was wearing a dark brown suit. Following the robbery Mr. Harp gave the police a description of defendant as being 6 feet tall, weighing two hundred pounds, and having light brown hair. About four weeks later he identified defendant in a lineup, but on cross-examination he admitted that out of the five persons assembled in the lineup only defendant even remotely resembled the description which he had previously given the police.

Gerald Seulke, a box boy employed by the market, testified he saw Roland Comtois coming out of the office carrying two white bags and a gun.

Manual Ybarra testified that on the evening of July 6, 1961, at around 9:50 p. m. he and his wife were standing in front of their home which is across the street from the market. He observed one man fall, who was running from the market with

another man. Both of these men got into a Chevrolet automobile which was being driven by a third man. He could not identify any of the men. He described the car as being a 1960 or 1961 Impala which was white with black trim. Later he said it was not a 1961 model, but was either a 1959 or 1960 model. He said he knew it was a '59 or '60 because the tail lights are different on these models. A sales manager for a Chevrolet agency testified that defendant had been one of their salesmen, and from May 5 to July 11 he had possession of a 1961 Impala which was white with red trim.

Gerald Graves, a deputy sheriff, testified that defendant and Gene Evans were arrested on July 31, 1961. Defendant was placed in a jail cell with Roland Comtois, who was previously arrested in connection with the robbery. By means of a concealed microphone, connected with a speaker and tape recorder, Officer Graves overheard, and recorded a conversation between defendant and Comtois. The officer was permitted to testify on direct examination as to the substance of this conversation after having refreshed his recollection by listening to the tape recording that morning. The tape itself was not offered into evidence, and the testimony was offered only as against defendant. Testimony concerning a separate recorded conversation between Gene Evans and Roland Comtois was offered in evidence only as against Evans.

In the conversation between defendant and Comtois, Officer Graves recalled that defendant asked, ''You haven't said anything to these . . ., have you?'' Comtois replied, ''No.'' Defendant said that he was a bit worried about Evans who was taking it awful hard, but that he would be all right unless he cracked. Defendant assured Comtois ''that Evans had nothing to worry about except that . . . Mexican.'' Defendant said that they were trying to get him mostly on the car. Comtois asked, ''What car,'' and defendant replied ''That '61 Chevy. What they don't know is I can prove I never had that car in my possession on the night of July 6, about 9:45.'' Officer Graves concluded relating the substance of this conversation by stating, ''That is about all I can remember of the conversation.''

Officer Graves testified that the next day they started to play the tape recording back to defendant, but defendant stopped them saying, ''Shut it off, I've heard this before, and I want to tell you all about it now.'' Defendant proceeded to confess to his participation in the robbery. Later on the same day defendant repeated substantially the same confession in the

presence of his codefendant Gene Evans and other law enforcement officers. Officer Graves also testified that on the following day while defendant and Evans were being transported to the court for arraignment, defendant said, ''Neither one of us were armed on this job. What do you think we'll get out of it?'' On cross-examination Officer Graves admitted that he had not related this last conversation at the preliminary hearing although he was asked about all conversations at the preliminary hearing. Also, on cross-examination he stated that no tape recording was made of the confession, and that he was mistaken at the preliminary hearing when he stated that there was a recording of the confession. Cross-examination also brought out that in the recorded conversation between defendant and Comtois defendant stated, ''They are trying to get me to admit to this robbery, and I have told them I don't know anything about it, and I don't.''

The defense was alibi, and five witnesses, including defendant, all gave substantially the same testimony concerning defendant's presence in a local tavern at a preplanned bachelor party at the time of the robbery. Defendant denied taking part in the robbery. He testified that he did not drive the 1961 Chevrolet that evening. He admitted that he had known Gene Evans for eight months, but that he had only seen Comtois occasionally at a bar and was not friendly with him. Defendant denied making the admissions and confession to which Officer Graves had testified.

In rebuttal Officer Graves was recalled by the People and was asked whether he remembered overhearing a conversation between defendant and Roland Comtois which took place in their jail cell. The defense objected that this was not proper rebuttal. The prosecuting attorney argued that it was being offered only to impeach the defendant's denial of making the statements and the objection was overruled. The testimony given on rebuttal while not identical to that adduced in the case in chief was substantially the same and no new material fact was added.

Defendant's first contention on appeal is that it was error to permit the repetition of Officer Graves' testimony concerning defendant's admissions under the guise of rebuttal. The prosecuting attorney argued that he had laid a foundation during cross-examination for impeachment, and this rebuttal testimony was being offered for that purpose only.

■■ Testimony tending to impeach an adverse witness must naturally follow the testimony of that witness; and there-

fore, it often becomes properly admissible on rebuttal. This is not true, however, with respect to statements or admissions of a party to the action. In *People* v. *Robinson,* 179 Cal.App.2d 624, 630 [4 Cal.Rptr. 50], it was held improper to admit testimony on rebuttal concerning damaging statements made by defendant. The court stated, "It was, of course, wholly unnecessary to question defendant on cross-examination with respect to any statement or admissions he may have made. The rules with respect to laying a foundation for impeachment by proof of inconsistent or contrary statements have no pertinency to proof of statements or admissions of a party. 'The act, declaration, or omission of a party, as evidence against such party' may be proved upon a trial. (Code Civ. Proc., § 1870, subd. 2.) The statements attributed to defendant by the rebuttal testimony were a part of the People's evidence in chief, and not proper rebuttal." The court then pointed out that the proper method would have been for the People to have moved to reopen their case in chief which motion could have been granted by the court only upon a showing of good cause.

In the *Robinson* case, *supra* (179 Cal.App.2d at p. 631) the defendant's statements were admitted for the first time on rebuttal. The opinion in that case points out that "[t]he People have no right to withhold a material part of their evidence which could as well be used in their case in chief, for the sole purpose of using it in rebuttal." In the case presently before us, the rebuttal was substantially a repetition of what had been offered in the case in chief rather than testimony which was withheld for use during rebuttal. Although the rebuttal testimony in the case at hand should be viewed as a repetition of testimony given in the case in chief, it was nonetheless not proper rebuttal. (See *People* v. *Van Ewan,* 111 Cal. 144, 149 [43 P. 520]; *People* v. *Peccole,* 92 Cal.App. 470 [268 P. 473].)

Defendant's second contention on appeal is that the prosecuting attorney was guilty of prejudicial misconduct by improperly suggesting that defendant gave the proceeds of the robbery to his father-in-law when there was no evidence to suggest such a thing. During the course of the trial it developed that defendant had purchased a used car lot within a month of the robbery. The defense countered this suspicious circumstance by explaining that the money had been borrowed from defendant's father-in-law, and they produced cancelled checks to substantiate this claim. The robbery occurred on

July 6, and the checks were dated July 14 and August 8. Defendant was asked by the prosecuting attorney whether he had given approximately $2,000 to his prospective father-in-law. Defendant replied, "No, sir, I did not." The prosecuting attorney then asked, "Isn't it true this money you received in the form of checks from your father-in-law was money you had given him on a prior occasion in July of this year?" Defendant replied that this was not true. Without any evidence to support this inferred financial cover-up, the prosecuting attorney was in effect suggesting the possibility that defendant had given some of the stolen money to his father-in-law and inferring to the jury he had some evidence to support this contention. The respondent's brief concedes that the prosecutor should not have asked these questions.

 It is improper for a prosecuting attorney to pursue a line of questioning which will insinuate that certain facts exist or are believed by the prosecuting attorney to exist, when they are not susceptible of proof. (*People* v. *Lo Cigno,* 193 Cal.App.2d 360, 388, 390 [14 Cal.Rptr. 354].) In order to avoid a charge of misconduct, the prosecutor must be prepared to follow up with some evidence questions which clearly suggest the existence of facts harmful to defendant, if their existence should be denied. (*People* v. *Perez,* 58 Cal.2d 229, 237-239 [23 Cal.Rptr. 569, 373 P.2d 617].)

Respondent urges that the error was not prejudicial, and even if it was prejudicial it is submitted that the prejudicial effect was cured by the following portion of the prosecuting attorney's closing argument: "At one time I had a belief here from the evidence that was elicited that there was some connection between the purchase of this car lot and the use of the proceeds of this robbery. Now, whether or not I have a personal belief as to that or not is not important. Only what evidence is here received is important, and is all that you should judge as to that aspect of the case. And that really is not too important, but I got into it and it is there.

"Now, there is testimony that there is a deceased father of Mrs. Miller that loaned the money. All right, they bought the car lot with borrowed money. That doesn't really affect whether or not—it doesn't affect the eye-witness testimony one wit [*sic*]. It doesn't affect the confession one wit [*sic*]. It is just a fact we explore."

Respondent notes that no objection was raised at the time the prosecutor asked these questions. Ordinarily, the prompt sustaining of objections to improper questions, coupled

with instructions to the jury to disregard the question, will cure the error unless the misconduct is of such a nature that it is well-nigh inevitable that the jury will give weight to the suggestions in spite of their good intentions to follow the instructions of the court to disregard such suggestions. (*People* v. *Anthony*, 185 Cal. 152 [196 P. 47].) ██ In the case at hand the questioning concerning the source of the car lot purchase funds was very limited and represented little more than exploratory cross-examination into the possible connection of the time of the robbery and the date of the checks for substantial amounts to defendant from his father-in-law. We feel that the effect of any impropriety was cured by the statement of the district attorney in his argument to the jury.

Defendant's final contention is that the prosecuting attorney was guilty of prejudicial misconduct in representing that the ''reasonable inference'' he drew from the facts in evidence was that Roland Comtois had confessed to the crime and had implicated the two defendants. In his closing argument to the jury, the prosecuting attorney referred to the fact that the defense had suggested that the sheriff's office was led to suspect defendant and the codefendant, Gene Evans, merely because they were casual friends of Roland Comtois. He then stated, ''Well, that is their inference from the facts. I can draw a lot more reasonable inferences in keeping with why there was a tape recording made. The inference I draw from these facts is this, that Comtois was arrested; he copped out and confessed the crime. He implicated these two men and these two men were then brought into the jail, . . .'' Defendant cites *People* v. *Ford*, 89 Cal.App.2d 467 [200 P.2d 867], in support of the conclusion that this constitutes error. In the *Ford* case the prosecutor was guilty of asserting in the closing argument the existence of a fact which was not supported by any evidence in the record, while in the case before us the prosecutor was merely relating the inferences he drew from the facts which were in evidence. ██ In respondent's brief it is conceded that the inference he drew was somewhat remote, but it has been held that in the argument to the jury, the right of counsel to draw any reasonable inference from the evidence is very wide—a matter within the trial court's discretion. The reasoning may be faulty and the deductions illogical since such matters are ultimately for the consideration of the jury. (*People* v. *Eggers*, 30 Cal.2d 676, 693 [185 P.2d 1]; *People* v. *Sieber*, 201 Cal. 341, 355-356 [257 P. 64].)

■ In his closing argument the prosecutor was attempting to answer the argument that defendant and his codefendant were dragged into the case only because they were casual friends of Roland Comtois. His inference that Comtois had confessed and implicated the others, coming from the prosecuting attorney, could well have been given considerable weight by the jury. Despite his protestations that it was merely an inference he was drawing, the jury could have concluded that he was attesting to what really was the case but technically not before them as evidence. This should be distinguished from an inference of a fact that the jury would not be likely to consider to be within the peculiar knowledge of the district attorney. However, it was within the discretion of the trial court to allow this as a fair inference from the fact that the police placed these men in a jail cell with Comtois and recorded their conversations, if, in fact, the prosecuting attorney was acting in good faith.

■ Defendant has incorporated in his appeal brief a portion of the testimony given at the preliminary hearing. The cases of Roland Comtois, Gene Evans, and defendant had been consolidated for the preliminary hearing. At that hearing Officer Graves testified that Comtois had admitted participating in the robbery, but that he refused to give the names of any other participants.

Respondent cites *People* v. *Justice,* 167 Cal.App.2d 616, 622 [334 P.2d 1031], in support of the proposition that since the preliminary transcript was not in the record before the trial court, it is not properly before this court on appeal. That case, as distinguished from the case presently before us, involved an alleged error committed during the preliminary proceeding. The only error alleged here is the misconduct of the prosecuting attorney during the trial, and the preliminary transcript is before this court not as a part of the record below but merely to assist this court in determining the nature of the conduct which transpired within the record.

If the prosecuting attorney had actual knowledge of Officer Graves' testimony given at the preliminary hearing, which was contained in the transcript of that proceeding, there could be no doubt that the prosecution's representation that he drew an inference which was contrary to known facts, would constitute misconduct. While we have the assertion in defendant's appeal brief that the prosecuting attorney had received a copy of the transcript of the proceedings had at the preliminary hearing, there is nothing more upon which

to warrant a conclusion that the prosecuting attorney was not acting in good faith. It must be borne in mind that the police testified directly that defendant confessed the crime. At its worst the suggested inference that the police placed defendant in a cell with Comtois because the latter had implicated him was cumulative and could not have played as substantial a role as could have occurred had there been no testimony of defendant's confession. In these circumstances the failure of the defense to object to the statement of the district attorney should be controlling. (*People* v. *Kolb,* 174 Cal.App.2d 102, 106 [344 P.2d 316].) Had a proper objection been made, the court might have admonished the jury to disregard the statements and thus removed any possible remaining prejudice.

We do not feel that the cumulative effect of this conduct and that of the improper rebuttal previously alluded to have deprived defendant of a fair trial. The evidence of guilt, as stated and shown hereinabove, is too apparent to justify the conclusion that a conviction would not have been obtained but for the errors made and warrants the application of article VI, section 4-1/2 of the California Constitution.

Judgment of conviction is affirmed.

Burke, P. J., and Ford, J.*, concurred.

*Assigned by Chairman of Judicial Council.