[Crim. No. 5959. Third Dist. May 18, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM EDDIE McDANIELS, Defendant and Appellant.

## COUNSEL

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Charles P. Just, Kenneth M. Malovas and Roger Venturi, Deputy Attorneys General, for Plaintiff and Respondent.

William Eddie McDaniels, in pro. per., and William S. Gregory, under appointment by the Court of Appeal, for Defendant and Appellant.

## OPINION

**COAKLEY, J.***—Defendant appeals from the judgment following jury verdict finding him guilty of two counts of first degree robbery (Pen. Code, §§ 211 and 211a), rape by threats (Pen. Code, § 261, subd. 3),[1] and the use of a firearm in the commission of the three offenses (Pen. Code, § 12022.5).

### FACTS

On March 12, 1970, defendant entered a bar in Sacramento County with a shotgun and took money from the patrons and from the cash register. Then, after herding the patrons into another room, he forced one of the cocktail waitresses to have sexual intercourse with him.

On March 15, three days after the crime, defendant, a Negro, was placed in a lineup with four other male Negroes. He effectively waived counsel at the lineup. All five men in the lineup were dressed in civilian clothes. The defendant, alone, wore a blue shirt, one which he had put on at his home at the time of his arrest.

The officer in charge at the lineup was aware of statements made by several of the victims on the day of the offenses to the effect that the perpetrator of the crime wore a blue shirt. The defendant was not advised of this fact when he appeared in the lineup wearing his blue shirt.

The in-court identification by the five witnesses who viewed the lineup were based upon observations of the defendant at the time of his offenses.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]The information charges a "Violation of Section 261.4, Penal Code, (Rape by Threats.)" Rape by threat is provided for in subdivision 3 rather than subdivision 4 of section 261. It is clear from the other allegations of count 3 that the defendant was charged with rape by threat rather than while the victim was unconscious at the time of the commission of the act which is the substance of subdivision 4.

This identification was independent of the lineup identification and was convincing. The rape victim viewed the defendant's face during the robbery and rape for over 10 minutes and identified the defendant by his eyes and his face, and not by the clothes which he wore. Other victims made similar facial identifications. Several of the victims had previously identified the defendant from photographs.

■ The defendant first contends that because of the circumstances attendant upon his being the only man in the lineup wearing a blue shirt, he was singularly marked for identification by the victims; that the lineup was unreasonably and unnecessarily suggestive and conducive to irreparable mistaken identification and therefore violative of the defendant's right to due process. The defendant further contends that when it is demonstrated that the lineup was conducted unfairly, the prosecution must prove by "clear and convincing evidence" that the in-court identifications were based upon observations of the accused at the scene of the robbery. (Citing *People* v. *Caruso* (1968) 68 Cal.2d 183 [65 Cal.Rptr. 336, 436 P.2d 336]; *People* v. *Floyd* (1970) 1 Cal.3d 694 [83 Cal.Rptr. 608, 464 P.2d 64]; *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926].)

Under the circustances, prudence suggests that the officer conducting the lineup should have advised the defendant not to wear a blue shirt. Prudence, however, is not a criterion. The criterion is whether the lineup was unnecessarily suggestive and conducive to irreparable mistaken identity. (*Stovall* v. *Denno* (1967) 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967]; *People* v. *Caruso, supra,* 68 Cal.2d at p. 188.) The application of that criterion in a given case "depends upon 'the totality of the circumstances.' " (See *People* v. *Harris* (1971) 18 Cal.App.3d 1 [95 Cal.Rptr. 468]; *People* v. *Harris* (1969) 274 Cal.App.2d 826, 832 [79 Cal.Rptr. 352], and the numerous United States Supreme Court cases cited in the latter case.)

The evidence in this case, summarized above, establishes that, in fact, the several victim-witnesses had ample opportunity to observe the defendant's facial and other physical characteristics during the commission of the crimes, and that the in-court identifications were based on characteristics other than the blue shirt. The fact that some of the witnesses also testified to defendant's wearing a blue shirt does not, in our opinion, negate or even cast any substantial doubt upon the certainty of identification based on the other factors of identification present in this case.

The recent case of *People* v. *Harris, supra,* 18 Cal.App.3d 1, is indistinguishable from our case. There, the defendant was one of four black

men in the lineup and the only one wearing bright yellow pants. The court held: "The mere fact that defendant was wearing the same color pants worn by the robber did not make the lineup unfair." There, as here, the in-court identification was positive, based on the defendant's "looks" and physical characteristics. There, as here, the witnesses also noted that the defendant wore a garment of distinctive color. (See *People* v. *Stanton* (1969) 274 Cal.App.2d 13 [78 Cal.Rptr. 771].)

▮ As an additional ground for reversal of the judgment, the defendant contends that Penal Code section 12022.5 is unconstitutional in that it unreasonably increases—for a minimum period of five years—the penalty for the commission of specified offenses when accompanied by the use of a firearm, whereas the prescribed punishment for the same offenses, absent the use of a firearm, does not carry an additional five years.

We first point out that Penal Code sections 12022.5 and 12022 are in *pari materia*. A brief history of those code sections will be helpful to an understanding of our decision.

Penal Code section 12022[2] derives from the Deadly Weapons Act. That act in its initial form was adopted in 1917 (Stats. 1917, ch. 145, p. 221). It was reenacted with modifications in 1923 (Stats. 1923, ch. 339, p. 695), and again with modifications in 1953 (Stats. 1953, ch. 36, p. 653), each reenactment simultaneously repealing the prior statute. The 1953 enactment provided for the codification of the act, and it is now part 4, title 2, section 12000 et seq. of the Penal Code (known as "The Dangerous Weapons' Control Law"—see Pen. Code, § 12000). Section 12022 was amended in 1968 (Stats. 1968, ch. 1386, § 1, p. 2720). It is unnecessary to discuss the amendments referred to because they do not affect the decision in this case, and a discussion will not enlighten this opinion. Section 12022.5 was added in 1969 (Stats. 1969, ch. 954, § 1, p. 1900).[3]

---

[2]The pertinent portion of section 12022 reads as follows: "Any person who commits or attempts to commit any felony within this state while armed with any of the deadly weapons, as defined by subdivision (f) of Section 3024, upon conviction of such felony or of an attempt to commit such felony, shall in addition to the punishment prescribed for the crime of which he has been convicted, be punishable by imprisonment in a state prison for not less than five nor more than 10 years. Such additional period of imprisonment shall commence upon the expiration or other termination of the sentence imposed for the crime of which he is convicted and shall not run concurrently with such sentence."

[3]The pertinent portion of section 12022.5 reads as follows: "Any person who uses a firearm in the commission or attempted commission of a robbery, assault with a deadly weapon, murder, rape, burglary, or kidnapping, upon conviction of such crime, shall, in addition to the punishment prescribed for the crime of which he has been convicted, be punished by imprisonment in the State prison for a period of not less than five years. Such additional period of imprisonment shall commence

The provision for an additional period of imprisonment upon conviction of a felony while armed with a deadly weapon first appears in the 1923 version of the act. It has remained a part of our penal law since that date. Its purpose is succinctly set forth in the following language from *People* v. *Robinson* (1970) 6 Cal.App.3d 448, 455 [86 Cal.Rptr. 56]: "The obvious legislative purpose behind sections 3024 and 12022 is to discourage the use of guns and similar deadly weapons in the commission of crimes to minimize the risk of death or serious physical injury to the victim; an armed felon is far more dangerous than an unarmed one."

In *In re Shull* (1944) 23 Cal.2d 745 [146 P.2d 417], which is cited in *Robinson, supra,* the court found reasonable grounds for imposing an additional penalty where a deadly weapon accompanied the commission of a basic offense. However, it declared that it did not believe that the Legislature intended to impose the additional penalty "where the felony of which the defendant stands convicted is that of assault with a deadly weapon under section 245," i.e., where a deadly weapon is an essential element of the basic crime. It reasoned that the Deadly Weapons Act (Stats. 1923, ch. 339, p. 695) is a general statute applicable to *all* felonies, whereas Penal Code section 245 is a special statute which controls the general statute. Accordingly, it held that the Deadly Weapons Act was not applicable to an assault with a deadly weapon (Pen. Code, § 245). The court clearly and expressly limited its holding to what it believed was the legislative intent. It did not go further and adopt the petitioner's (in habeas corpus) contention that such additional punishment constituted double punishment and double jeopardy. And in *People* v. *Henry* (1970) 14 Cal.App.3d 89 [91 Cal.Rptr. 841] (hg. den.) this court held that the additional penalty provided in Penal Code section 12022.5 for first degree robbery does not constitute either double jeopardy or double punishment.

Applying the rationale of *Shull, supra,* subsequent decisions held that Penal Code section 12022 was not applicable where the conviction was for the basic crime of assault with a deadly weapon (Pen. Code, § 245)[4] or for armed robbery (Pen. Code, § 211a).[5] The line of cases culminated in

upon expiration or other termination of the sentence imposed for the crime of which he is convicted and shall not run concurrently with such sentence.

"⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅

"This section shall apply even in those cases where the use of a weapon is an element of the offense."

[4]*People* v. *Ford* (1964) 60 Cal.2d 772, 790 [36 Cal.Rptr. 620, 388 P.2d 892]; *People* v. *Cervantes,* 13 Cal.App.3d 587, 594-595 [91 Cal.Rptr. 691].

[5]*People* v. *Floyd* (1969) 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862]; *People* v. *King* (1969) 71 Cal.2d 885 [80 Cal.Rptr. 26, 457 P.2d 866]; *People* v. *Hogan* (1969) 71 Cal.2d 888 [80 Cal.Rptr. 28, 457 P.2d 868]; *People* v. *Lyons* (1970)

*People* v. *Floyd* (1969) 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862], *People* v. *King* (1969) 71 Cal.2d 885 [80 Cal.Rptr. 26, 457 P.2d 866] and *People* v. *Hogan* (1969) 71 Cal.2d 888 [80 Cal.Rptr. 28, 457 P.2d 868], all decided by our Supreme Court on August 20, 1969. Each involved conviction for first degree robbery. In each the court limited its decision to holding that Penal Code section 12022 was not applicable to robbery first degree for the same reason it gave in *Shull,* viz., it was not the legislative intent to make Penal Code section 12022 applicable to offenses in which a firearm is generic to the offense. It is significant though not controlling that in the many cases which have followed the *Shull-Floyd* doctrine not one has suggested that the additional penalty provided by Penal Code section 12022 may be constitutionally infirm. And, as noted earlier, this court in *People* v. *Henry, supra,* 14 Cal.App.3d 89, held that Penal Code section 12022 is not violative of one's Sixth Amendment rights. So much for the history of Penal Code section 12022.

We now consider the history of Penal Code section 12022.5, the section at issue in this case. We first point out that it is axiomatic that the Legislature had a purpose in adding this section to the Penal Code. That purpose is not difficult to conjure. Patently, the Legislature, along with a large segment of the public, was alarmed at the very great increase in recent years in the number of crimes in which a firearm was used. Presumably the Legislature was aware of the fact that our courts had declared that the additional punishment provided by Penal Code section 12022 was not applicable to those offenses in which a firearm was an essential element of the crime. Responding to its own and to the public concern, it enacted Penal Code section 12022.5 in 1969. It is apparent from the language of that amendment that the Legislature was attempting to meet and overcome the objection or reason assigned in *Shull* and in succeeding cases in applying Penal Code section 12022 to those crimes in which a deadly weapon was involved, including armed robbery and assault with a deadly weapon. It accomplished this purpose, first, by specifying six particular felonies, rather than felonies generally, as in Penal Code section 12022; second, by specifying that the additional penalty was applicable to the "use" of the firearm rather than "while armed with any of the deadly weapons . . ." third, and of particular significance, after specifying robbery and assault with a deadly weapon as two of the six crimes to which the additional punishment should apply, it concluded its amendment with these words: "This section

4 Cal.App.3d 662 [84 Cal.Rptr. 535]; *People* v. *Bryan* (1970) 3 Cal.App.3d 327 [83 Cal.Rptr. 291]; *People* v. *Williams* (1970) 2 Cal.3d 894 [88 Cal.Rptr. 208, 471 P.2d 1008]; *People* v. *Ortega* (1969) 2 Cal.App.3d 884 [83 Cal.Rptr. 260]; *People* v. *Snyder* (1969) 276 Cal.App.2d 520 [80 Cal.Rptr. 822].

shall apply even in those cases where the use of a weapon is an element of the offense."

It is difficult to conjure how the Legislature could have expressed more explicitly its intention that the additional punishment shall be applicable to six specified crimes, including armed robbery and assault with a deadly weapon. Of course, it could have done so by separately amending the particular code sections which fix the penalties for the specific six felonies. Thus, it might have amended Penal Code section 213 to increase the minimum penalty for armed robbery from five to ten years, and Penal Code section 245 to increase the minimum penalty for assault with a deadly weapon from six months in the state prison[6] to five years. That it chose to accomplish its purpose through one rather than six amendments is not a valid reason for declining to carry out the legislative intent if that intent is clear, and if the amendment is not invalid for other reasons. In our opinion the purpose and intent of Penal Code section 12022.5 is clear beyond a reasonable doubt.

The legislative intent no longer being debatable, the remaining question is whether the classification is reasonable. The history of our criminal statutes is replete with instances in which the Legislature has increased or decreased the penalties prescribed for particular crimes.[7] We know of no case in which such change has, per se, been declared unconstitutional.

The following language from *People* v. *Pearce* (1970) 8 Cal.App.3d 984, 988 [87 Cal.Rptr. 814], contains an excellent summary of the law applicable to the contention of unreasonable classification:

"The classifications prohibited by the equal protection clause are those which have no rational relationship to the ends sought to be attained by the state. (See *McGowan* v. *Maryland* (1961) 366 U.S. 420, 425 [6 L.Ed.2d 393, 399, 81 S.Ct. 1101].) But some classification is inevitable and constitutionally permissible and there is a very strong presumption of validity in legislative classifications: '[I]t has long been settled that a classification, though discriminatory, is not arbitrary nor violative of the equal protection clause of the Fourteenth Amendment if any state of facts reasonably can be conceived that would sustain it.' (*Allied Stores of Ohio* v. *Bowers* (1959) 358 U.S. 522, 528 [3 L.Ed.2d 480, 486, 79 S.Ct. 437].)"

We hold that the concern of the Legislature over the use of fire-

[6]See alternative penalties provided for in that section.

[7]See, e.g., West's Annotated Penal Code, Historical Notes to Penal Code section 237 and Penal Code section 245.

arms in the commission of crimes, and its desire to deter the use thereof by increasing the penalties attendant upon this use constituted reasonable grounds for increasing the penalties theretofore provided for the crimes enumerated in Penal Code section 12022.5, including armed robbery, even though the use of a deadly weapon is an essential element of the crime.

Finally, it should be noted that count 3 of the information charges rape accompanied by use of a firearm, and that the jury found the defendant guilty thereof. Since rape (Pen. Code, § 261), unlike armed robbery (Pen. Code, § 211a), may be committed without the use of a firearm, none of the objections which the defendant has offered to the application of Penal Code section 12022.5 to the armed robbery counts (counts 1 and 2) is applicable.

The judgment is affirmed.

Richardson, P. J., and Regan, J., concurred.

A petition for a rehearing was denied June 5, 1972, and appellant's petition for a hearing by the Supreme Court was denied July 12, 1972.