[Crim. No. 14923. Fourth Dist., Div. Two. Mar. 28, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
GILBERT SANTASCOY, Defendant and Appellant.

**[Opinion certified for partial publication \*]**

---

\*See *post,* page 913.

## COUNSEL

Paul A. Stabile, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, A. Wells Petersen and Racquel M. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McDANIEL, J.**—Defendant Gilbert Santascoy has appealed from a judgment finding him guilty of attempt to commit murder and assault with a deadly weapon.

### FACTS

Shortly after 12 o'clock on a late summer's night, Johnny Perez and Eddie Ramirez, both bleeding from stab wounds, ran to a liquor store in the City of Upland for help. They needed medical attention, and they wanted assistance from the police as well because two of their friends were still "back there." The police found the friends, one of whom at least, Michael Artea, had also sustained stab wounds. Perez and Ramirez claimed that they had been attacked and stabbed by Gilbert Santascoy and Vincent Ochoa while they were looking for a friend in the Los Olivios area housing project in the City of Upland.[1] Santascoy claimed that in fact Perez and Ramirez had attacked him, but he had run away when his friend Vincent Ochoa came to his aid.

Santascoy was charged with two counts of attempt to commit murder, one for Perez and the other for Ramirez. Each of the counts also alleged that Santascoy, with the intent to do so, inflicted great bodily injury upon the victims in violation of Penal Code section 12022.7.

During the jury trial, Perez, Ramirez and Artea testified to essentially the same story. Perez, Ramirez, Artea and Chacon were "partying" at a friend's house on the night of the crime, when Ramirez received an invitation from his uncle to come to a pool party that night at the uncle's house. The four decided to go and left the original party sometime around 10 or

---

[1]Vincent Ochoa is not a defendant in this action; however he did testify at trial. He was only 16 at the time the offenses were committed and therefore was processed through the juvenile justice system.

10:30 p.m., in Perez' car, with Perez driving, Ramirez in the passenger seat and the other two in the back.

Ramirez wanted to invite a friend of his along and so asked Perez to drive to the Los Olivios housing project where the friend lived. However, Perez was concerned about how safe it would be for them to go there. Apparently, Ramirez told Perez it would be all right because Ramirez had grown up there. Nevertheless, he directed Perez to park his car in a parking space on the very edge of the project. This precaution was taken because all agreed that driving through this area in Perez' fancy Grand Prix would be asking for trouble.

Once parked, Perez and Ramirez walked along the road to the friend's house. On the way they passed Ochoa and another man (Santascoy) going in the other direction. They greeted each other in passing and continued on. Ramirez' friend was not home, and so he and Perez returned to the car.

Just after they returned to the car and were seated in it, Santascoy appeared at Perez' (the driver's) window, and Ochoa at the passenger window. Santascoy asked Perez who he was and what he was doing there. Perez told him his name and said they were just leaving. Santascoy, with his hand in his coat pocket, told Perez if he tried to leave he would "blow off their heads" with a gun. No one ever saw a gun.

Santascoy then ordered Perez to open his trunk. Perez got out of the car and did so. Santascoy, standing behind Perez at the rear of the car, directed Perez to climb into the trunk. He refused. Immediately thereupon Perez felt a stab in the back, then another. He spun around, and Santascoy then stabbed him in the left breast. While this was occurring, Perez called to Ramirez for help. Ramirez attempted to go to his aid but was attacked and stabbed twice by Ochoa. The two men struggled, and, after Ramirez had managed to knock down Ochoa, he (Ramirez) was stabbed from behind by Santascoy. At this point Perez yelled "Let's get out of here" and the two of them ran to the liquor store down the street for help. Meanwhile, Artea and Chacon climbed out of the car and attempted to flee. They also were each stabbed several times as they fled.

Ochoa testified at trial for the defense. He claimed he had seen Perez and Ramirez (with a knife) attacking Santascoy and had run to Santascoy's aid. Ochoa testified he took Ramirez' knife and then began stabbing at everything. Santascoy testified in his own behalf, claiming that he had no weapon but was attacked by Perez and Ramirez and once Ochoa showed up he ran to his girlfriend's house.

The jury returned a verdict on count 1 finding Santascoy guilty of an attempt to murder Perez and, in doing so, had, with intent, inflicted great bodily injury on Perez.

On count 2, the jury found Santascoy guilty of the necessarily included lesser offense of an assault on Ramirez with a deadly weapon.

Santascoy was sentenced on count 1 to state prison for the aggravated term of nine years, plus a three-year enhancement. His sentence on count 2 was stayed pending appeal.

Santascoy contends on appeal that: (1) the court committed prejudicial error by instructing the jury that it could convict Santascoy of attempted murder if they found implied malice aforethought; (2) the court abused its discretion in denying his 352 motion to exclude all evidence of his gang membership; and (3) he was denied effective assistance of counsel because his attorney failed to make a motion to exclude from the courtroom witnesses who weren't testifying at the time.

Only the discussion which addresses the first assignment of error warrants publication. Accordingly, the discussion under parts II and III will be relegated to an appendix which will be certified for nonpublication.

DISCUSSION

I

JURY INSTRUCTIONS

Turning to defendant's first assignment of error, namely that the court instructed the jury that it could convict defendant of attempt to commit murder if it found implied malice, if this was the net legal result of the court's instructions, then defendant is correct in assigning error. ■ This follows, for it has long been conclusively established in this state, beyond the need for citation of authority, that a person to be guilty of the crime of attempt to commit murder must harbor the *specific* intent to kill at the time of the overt act by which the attempt is manifested. (*People* v. *Miller* (1935) 2 Cal.2d 527, 532-533 [42 P.2d 308].)

Otherwise, when instructing on the elements of an attempt to commit any crime, it is always necessary to define the underlying crime. In the instance where, as here, the underlying and unperfected crime is murder, a possible ambiguity, potentially prejudicial, can enter the picture, for, when murder is defined, such definition could, in and of itself, rightly include examples

of murder where no specific intent to kill is present, i.e. where malice is implied. However, as to the crime of attempt to commit murder, where a specific intent to kill is absolutely required, reliance upon any definition of murder based upon implied malice is logically impossible, for implied malice cannot coexist with express malice. With this fundamental concept to be reckoned with, instructions on the crime of attempt to commit murder, necessarily, when they define the underlying crime of murder, must be limited only to that kind of murder where a *specific* intent to kill or, in other words, *express* malice, is one of the elements.

 The task then which we face in assessing defendant's first assignment of error is whether the instructions as given actually afforded the jury the opportunity to convict defendant of the crimes *charged* on the alternative theory of implied malice. If the instructions really were erroneous in this respect, then the dispositive question becomes whether, on the facts of this case, such error was prejudicial. What then were the relevant instructions given by the trial court?

First, the court gave CALJIC No. 8.10: "Defendant is charged in counts 1 and 2 of the information with the commission of the crime of attempt to commit the crime of murder, . . .

"The crime of murder is the unlawful killing of a human being with malice aforethought.

"In order to prove the commission of the crime of murder each of the following elements must be proved: [¶] 1. that a human being was killed, [¶] 2. that the killing was unlawful, and [¶] 3. that the killing was done with malice aforethought."

Next the court gave CALJIC No. 8.11: "Malice may be either express or implied. [¶] Malice is express when there is manifested an intention unlawfully to kill a human being. [¶] Malice is implied when the killing results from an intentional act involving a high degree of probability that it will result in death, which act is done for a base, antisocial purpose and with wanton disregard for human life. When it is shown that a killing resulted from the intentional doing of an act with express or implied malice, no other mental state need be shown to establish the mental state of malice aforethought."

Next the court gave CALJIC No. 6.00: "An attempt to commit a crime consists of two elements, namely, a specific intent to commit the crime, and a direct but ineffectual act done toward its commission. . . .

And then: "An attempt to commit the crime of murder consists of two elements, namely, a specific intent to kill another human being, and a direct, but ineffectual act done towards its commission."

Finally, the court gave CALJIC No. 3.31: "In the crime charged in counts 1 and 2 of the information, namely, attempt to commit the crime of murder, there must exist a union or joint operation of act or conduct and a certain specific intent in the mind of the perpetrator and unless such specific intent exists the crime to which it relates is not committed.

"The specific intent required was included in the definition of the crime charged that I have already given to you.

"The crime of attempt to commit the crime of murder requires the specific intent to commit murder."

In reviewing the instructions given, we are satisfied that the trial court, in giving CALJIC No. 6.00, correctly instructed in defining the crime *charged,* i.e., that the crime of attempt to commit murder is one requiring a *specific* intent to kill another human being. The court also gave CALJIC No. 3.31 which included a recitation that "the specific intent required was included in the *definition* of the crime *charged* that I have already given you." (Italics added.)

It is suggested that the quoted recital from CALJIC No. 3.31, by implication, referred to *murder,* as defined in terms of one of its elements, by the court in CALJIC No. 8.11, which definition arguably does not require a specific intent to kill in all instances. Such definition allows alternatively for proof of murder based on implied malice, an impermissible alternative under the law set out in our initial discussion. Such suggestion provides the predicate for urging application of a rule discussed in *People* v. *Murtishaw* (1981) 29 Cal.3d 733 [175 Cal.Rptr. 738, 631 P.2d 446]. In *Murtishaw,* the defendant shot four persons, three of whom died. He was later convicted of three counts of first degree murder and of one count of assault with intent to commit murder, the latter with reference to the victim who survived. In its commentary on what had occurred in the trial court, the Supreme Court in *Murtishaw* said,

"First, the jury was instructed in terms of CALJIC No. 3.31 that each of the crimes charged (murder and assault with intent to commit murder) require a specific intent, and that '[i]n the crime of first degree murder, in the crime of second degree murder based on express malice aforethought and in the crime of assault with intent to commit murder, the necessary specific intent is to unlawfully kill.' From this instruction the jury would have to

conclude that it could not convict defendant on the assault charge without finding that he intended to kill the victims. [¶] The jury was also instructed under the 1970 revision of CALJIC No. 9.01 that '[e]very person who assaults another with the specific intent to commit murder' is guilty of a violation of Penal Code section 217. This instruction speaks of intent to 'murder,' not to 'kill,' and as, we shall explain, the instructions defined murder to include forms of murder not requiring an intent to kill. [¶] Specifically, the court instructed the jury it could find defendant guilty of murder on any of three theories: express malice, implied malice, or felony murder. Express malice, it explained, means 'an intention unlawfully to kill.' Malice is implied, it instructed, 'when the killing results from an act involving a high degree of probability that it will result in death, which act is done for a base, antisocial purpose and with a wanton disregard for human life by which is meant an awareness of a duty imposed by law not to commit such acts followed by the commission of the forbidden act despite that awareness or when the killing is a direct cause of result of the perpetration or the attempt to perpetrate a felony inherently dangerous to human life.' (CALJIC No. 8.11.) [¶] Thus taken as a whole, the instructions on assault with intent to commit murder were contradictory. The court defined the mental elements essential to the crime in two different ways—intent to kill and intent to murder—and by implication defined the latter to include forms of murder not requiring an intent to kill." (*Id.,* at p. 763.)

In *Murtishaw,* the defendant argued to the Supreme Court that the trial court erred when it failed to instruct that only express malice could support a conviction for assault with intent to commit murder, adding that the court should have explained that the concept of implied malice is inapplicable to the crime of assault with attempt to commit murder. The Supreme Court in *Murtishaw* agreed with that contention.

Defendant here makes the same contention, and so we must decide whether the instructions given here were contradictory in the same way in which they were in *Murtishaw.* In our view, they were not, and to contend that they were could only arise from misreading the instructions.

To recap the instructions given here, the trial court first gave CALJIC No. 8.10, pointing out that defendant was *charged with two counts of attempt to commit murder.* It then defined murder (not attempt to commit murder and not a charged crime) as "the unlawful killing of a human being with malice aforethought." It then elaborated on what was necessary to *prove* the crime of murder, specifying three elements: (1) a human being must be killed; (2) such killing must be unlawful; and (3) such killing must be done with malice aforethought. The court then inexplicably digressed from the context of the charged crime before it and gave CALJIC No. 8.11

which undertakes to define malice, including the corollary that there are two kinds of malice, express and implied. The latter occurs, according to this gratuitous instruction, "when the killing results from an intentional act involving a high degree of probability that it will result in death, which act is done for a base, antisocial purpose and with a wanton disregard for human life."

Up to that point, in its instructions, the trial court had not yet dealt directly with the crimes *charged* except to state at the outset that the defendant had been charged with two counts of attempt to commit murder. The court then came to the point and gave CALJIC No. 6.00 which correctly defined the crime charged. It stated "An attempt to commit a crime consists of two elements, namely, a *specific* intent to commit the crime, and a direct but ineffectual act done toward its commission . . . And then, "An attempt to commit the crime of murder consists of two elements, namely, a *specific* intent to kill another human being, and a direct but ineffectual act done towards its commission." (Italics added.) This was the core of the instructions and the only one given which undertook to *define* the crimes *charged*.

In concluding the instructions, the court gave CALJIC No. 3.31, which added little of substance, reciting: "In the crime charged in counts 1 and 2 of the information, namely, attempt to commit the crime of murder, there must exist a union or joint operation of act or conduct and a certain *specific* intent in the mind of the perpetrator[,] and[,] unless such specific intent exists the crime to which it relates is not committed. [¶] The *specific* intent required was included in the definition of the crime *charged* that I have already given to you. [¶] The crime of attempt to commit the crime of murder requires the *specific intent to commit murder.*" (Italics added.)

The last sentence of that instruction was as explicit as it could have possibly been in pointing out that the crime here *charged* requires the specific intent to commit murder. Where then does the contradiction arise which was considered in *Murtishaw*? It is suggested that it can be found in the next to last sentence of CALJIC No. 3.31 which recited that "the specific intent required was included in the definition of the crime *charged* that I have already given you." (Italics added.) Defendant suggests that this portion of the instructions refers by implication to CALJIC No. 8.11 which contains the impermissible reference to implied malice.

In other words, defendant argues, quoting from *Murtishaw,* "Thus taken as a whole, the instructions on assault with intent to commit murder were contradictory. The [trial] court defined the mental elements essential to the crime in two different ways—intent to kill and intent to murder—and by implication defined the latter to include forms of murder not requiring an

intent to kill." (*People* v. *Murtishaw, supra,* 29 Cal.3d 733, 763.) The upshot of this, defendant argues, is that we cannot know for certain on which theory of murder the jury voted to convict, i.e. whether on express malice (permissible) or implied malice (impermissible).

As noted above, this argument could only arise from a misreading of these instructions. Here, as distinguished from the instructions in *Murtishaw,* the trial court did not actually give two definitions of the crime *charged,* it gave only CALJIC No. 6.00, with the result that at no point was the jury ever instructed, with reference to the crime *charged,* that anything less than a specific intent to kill could provide the basis for conviction. Thus, in terms of a finite, incisive reading of the instructions, there was not the contradiction present here that was held in *Murtishaw* to be error.

Nevertheless, coming down on the side of caution, we hold that it was error to include CALJIC No. 8.11 as part of the instructions. It added nothing; however, it introduced the possibility of confusing the jury; it should not have been given. In speaking to trial courts on this point, we shall put it plainly. ■ In instructing upon the crime of attempt to commit murder, there should never be any reference whatsoever to implied malice. Nothing less than a specific intent to kill must be found before a defendant can be convicted of attempt to commit murder, and the instructions in this respect should be lean and unequivocal in explaining to the jury that only a specific intent to kill will do.

■ Returning to the case here, the question thus becomes whether the error was prejudicial. Taking our cue from *Murtishaw,* we hold, as did the Supreme Court there, that the vagrant reference to implied malice was not prejudicial. In *Murtishaw,* the Supreme Court, in holding that the erroneous instructions were not prejudicial, stated ". . . in light of the evidence presented it is virtually certain that the jury found that the defendant intended to kill these victims. Defendant's assault on Lance Bufflo [the survivor] cannot be distinguished from his slaying of Bufflo's companions." (*People* v. *Murtishaw, supra,* 29 Cal.3d 733, 765.)

Similarly, in light of the evidence here, there can be little, if any, doubt that the jury was not confused or misled. The evidence showed that defendant threatened Perez while he was still in the car by angrily uttering that he would blow the intruders' heads off. Seconds later, after Perez had been ordered out of the car, ordered to unlock the trunk, and ordered to get in it, defendant stabbed Perez in the back and then in the chest. A scuffle followed between the passenger Ramirez, and defendant's companion Ochoa. After Ramirez managed to knock Ochoa down, defendant then stabbed Ramirez from behind. Based upon this evidence, the jury convicted

defendant of attempt to commit murder as to Perez, but only of the lesser included offense of assault with a deadly weapon as to Ramirez.

This differential disposition of the two identical crimes charged demonstrates conclusively that the jury was not confused. The only possible reason for reaching a different result as between the two victims was that the jury found a specific intent to kill as to Perez but not as to Ramirez; the overt acts were the same as to each. The attack upon Perez was immediately after the threat to kill; the attack upon Ramirez came only after Ramirez was in the midst of besting Ochoa in their scuffle. As a consequence, we do know that the jury found that defendant harbored a specific intent to kill Perez. Thus, on this record, we cannot say that it is reasonably probable that a result more favorable to the defendant would have been reached in the absence of CALJIC No. 8.11. Accordingly, the inclusion of that instruction, while error, was not prejudicial.

Because defendant relies heavily on *People* v. *Collie* (1981) 30 Cal.3d 43 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776], some comment on that case is in order. In *Collie* the defendant was charged with attempted first degree murder of his estranged wife (together with forcible sodomy) and attempted second degree murder of the couple's daughter. The Supreme Court, in commenting on the jury instructions, stated, "Defendant correctly contends that the trial court erred in instructing the jury that it could convict of attempted second degree murder despite the absence of a specific intent to kill. The court instructed the jury in the language of CALJIC No. 8.31 (1974 rev.) which, as modified by the court in the language we have italicized, reads as follows: " 'Murder of the second degree is [also] the unlawful killing of a human being as the direct causal result of an act involving a high degree of probability that it will result in death, which act is done for a base, antisocial purpose and with wanton disregard for human life by which is meant an awareness of a duty imposed by law not to commit such acts followed by the commission of the forbidden act despite that awareness. [¶] When the killing, *or the attempted killing in this case,* is the direct result of such an act, it is not necessary to establish that the defendant intended that his act would result in the death of a human being.' " (*Id.,* at p. 61.)

In light of our discussion of attempt to commit murder at the outset, the defect in the instruction given in *Collie* is flagrant. Any instruction defining attempt to commit murder which specifically affords the jury the opportunity to convict on the basis of implied malice is just plain wrong, and so the holding in *Collie* is clearly consistent with long-established law. However, that holding is of no comfort to defendant here, for there is no similarity whatsoever between CALJIC No. 8.31 (1974 rev.) given in *Collie* and the instructions given by the trial court here.

Based upon the foregoing discussion, we hold that the jury instructions did not constitute prejudicial error.

## Disposition

The judgment is affirmed.

Morris P. J., and Kaufman J., concurred.