[Crim. No. 22143. Feb. 21, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
STEPHEN WAYNE ANDERSON, Defendant and Appellant.

**COUNSEL**

Chuck Nacsin, under appointment by the Supreme Court, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John W. Carney, Frederick R. Millar, Jr., and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MOSK, J.**—This is an automatic appeal (Pen. Code, § 1239, subd. (b)) from a judgment of death under the 1978 death penalty law (*id.*, § 190.1 et seq.). We affirm the judgment as to guilt but set aside the special circumstance finding under compulsion of *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862], and *People* v. *Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826].

The facts necessary to decide this appeal are undisputed; the following summary is taken largely from defendant's confession, which was corroborated by the prosecution's physical evidence. Defendant put on no defense at the guilt phase.

After watching a house for several days, defendant believed it was empty and its occupants were away on vacation; in fact it was inhabited by an

elderly woman, Mrs. Lyman. Defendant went to the house about midnight for the purpose of burglarizing it. He broke in through the back door and began "checking" each of the rooms. As he entered Mrs. Lyman's bedroom she sat up suddenly in the dark; defendant later told the police, "all I seen was the shadow coming at me." Startled, he fired a single shot in her direction. Defendant then ransacked the house, took some money, and began to eat some food. He was caught red handed when neighbors alerted the police.

The single shot struck and killed Mrs. Lyman. The police asked defendant what his intentions were when he broke into the house; he replied that "if I couldn't get no money," his intent "was to get something to eat and to get out. . . . I had no intention of shooting nobody." During a filmed reenactment of the event the police asked defendant whether he intended to kill any occupant of the house. He answered, "No. I just reacted, uh, out of fear . . . saw this figure coming towards me. I didn't know who it was and I just shot." When a second detective reiterated the question, defendant again explained, "it just loomed at me. . . . I have bad eyes and—and it was just there and I reacted."

Defendant was charged with one count of murder and one count of burglary; as a special circumstance, it was alleged that the murder occurred while defendant was engaged in the commission of a burglary (Pen. Code, § 190.2, subd. (a)(17)(vii)). The jury found defendant guilty as charged, and at the penalty phase returned a verdict of death.

Defendant makes three claims of error bearing on the guilt phase, but each is invalid under recent decisions of this court. ■ He first contends that the exclusion for cause of one venireman who was unalterably opposed to the death penalty denied him a jury drawn from a representative cross-section of the community. The contention was rejected by a majority of this court in *People* v. *Fields* (1983) 35 Cal.3d 329, 342-353 (plur. opn.), 374 (conc. opn. of Kaus, J.), [197 Cal.Rptr. 803, 673 P.2d 680].

Defendant next asserts that the exclusion for cause of the foregoing venireman also denied him a "neutral" jury on the issue of guilt. We held in *Hovey* v. *Superior Court* (1980) 28 Cal.3d 1, 68 [168 Cal.Rptr. 128, 616 P.2d 1301], that this question cannot be answered "until further research is done which makes it possible to draw reliable conclusions about the non-neutrality of 'California death-qualified' juries in California," i.e., juries from which veniremen who would always vote for the death penalty (the "automatic death penalty" group) are excluded. Defendant fails to provide us with any such studies.

■ Lastly, defendant argues that the felony-murder rule, under which he was convicted in this case, denied him due process of law because it raised a conclusive presumption of malice. We rejected this contention in *People* v. *Dillon* (1983) 34 Cal.3d 441, 472-476 [194 Cal.Rptr. 390, 668 P.2d 697].[1]

■ Defendant is correct, however, in claiming error in the instructions on the special circumstance allegation. The court instructed the jury to find the special circumstance allegation true if it found that the murder was committed (1) while defendant was engaged in the commission of a burglary and (2) for the purpose of facilitating that crime or an escape therefrom, or of avoiding detection. The court did not instruct the jury that it could not find the special circumstance allegation true unless it also found that defendant intended to kill Mrs. Lyman.

The failure to so instruct was error under *Carlos* v. *Superior Court, supra,* 35 Cal.3d 131, 152-154, which held that the 1978 death penalty law must be construed to require proof of intent to kill as an element of a felony-murder special circumstance.

The case at bar was pending when *Carlos* was decided, and hence is governed by that rule. (*People* v. *Garcia, supra,* 36 Cal.3d 539, 547-549.) *Garcia* declares the error reversible per se (*id.* at pp. 549-554), with four narrow exceptions (*id.* at pp. 554-556). We need not reiterate those exceptions at length. The Attorney General relies on only one of them, the so-called *Cantrell-Thornton* exception, described as "cases where the parties recognized that intent to kill was in issue, presented all evidence at their command on that issue, and in which the record not only establishes the necessary intent as a matter of law but shows the contrary evidence not worthy of consideration." (*Id.* at p. 556.)

The exception is inapplicable on this record. To begin with, there is no showing that the parties recognized that intent to kill was an issue. On the contrary, the prosecution made no effort to prove such intent; its sole theory of murder was that the killing occurred during the commission of a burglary

---

[1]By supplemental brief defendant also contends he was denied effective assistance of counsel when his trial attorney, in oral argument, "asked the jury to convict [him] of first degree murder." This is a misreading of the record. In the body of his argument, counsel urged the jury to find that because of alcohol-induced diminished capacity defendant lacked specific intent to commit burglary and therefore could *not* be convicted of first degree murder on the prosecution's felony-murder theory. In the passage now criticized, counsel argued hypothetically that *if* the prosecution had proved premeditation and deliberation—which it did not even attempt to do—he would not oppose a verdict on that theory; his purpose in so arguing was evidently to emphasize that the prosecution's only viable theory was felony murder, which he rejected for the reason stated. The argument was not improper.

and hence was statutory first degree felony murder (Pen. Code, § 189). The evidence, argument, and instructions were all confined to that theory.

Second, the record does not establish intent to kill as a matter of law. The Attorney General emphasizes certain facts favorable to his position, i.e., that the gun defendant used did not have a hair trigger and could not be discharged unless it was cocked and the safety catch was off; that defendant fired a single shot at close range directly at the figure he saw in the bedroom; and that he was not drunk and had no mental disease or defect. Taken singly or together, however, these facts do not legally foreclose the possibility that defendant, as he told the police, may have pulled the trigger as an instinctive reaction in defense of his person. (See *People* v. *Whitt* (1984) 36 Cal.3d 724, 735-736 [205 Cal.Rptr. 810, 685 P.2d 1161].) It was for the jury to decide this factual issue under proper instructions. The Attorney General also stresses that defendant did not flee immediately after the shooting but remained in the house to search for money and something to eat. Although conduct of the defendant after the perceived danger has passed may be relevant to his state of mind before the event, it is not conclusive of that issue; however callous such conduct may seem in retrospect, it does not prove as a matter of law that he entertained a specific intent to kill at the moment he fired the gun. (Cf. *People* v. *Anderson* (1968) 70 Cal.2d 15, 33 [73 Cal.Rptr. 550, 447 P.2d 942].)

Thirdly, defendant's evidence on the question was not wholly unworthy of consideration. His extrajudicial statements to the police—i.e., that he was startled when Mrs. Lyman suddenly rose up in the dark and he reacted reflexively and out of fear—were not inherently incredible, nor was his unqualified denial of an intent to shoot anyone.

It follows that the special circumstance finding must be set aside for violation of the *Carlos* rule, and we need not reach defendant's claims of error on the penalty phase. Because the invalid special circumstance finding was the sole basis for conducting that proceeding, the verdict as to penalty is unsupported as a matter of law and must likewise be set aside.

The judgment is affirmed as to guilt. The special circumstance finding is set aside. The judgment is reversed as to penalty.

Bird, C. J., Kaus, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

LUCAS, J.—I concur with the majority opinion to the extent it affirms defendant's conviction of murder and burglary. I also concur with the remaining portion of the judgment, setting aside the special circumstances

finding and reversing the penalty of death, but only under the compulsion of *People* v. *Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826], and *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862]. For reasons I have previously expressed, I disagree with the holdings in those cases (see *People* v. *Whitt* (1984) 36 Cal.3d 724, 749 [205 Cal.Rptr. 810, 685 P.2d 1161] [dis. opn.]), but they do appear to control the disposition of the present case.