[No. B001788. Second Dist., Div. Seven. Aug. 28, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD BOUNDS, Defendant and Appellant.

In re EDWARD BOUNDS on Habeas Corpus.

[Opinion certified for partial publication.*]

*Pursuant to rules 976 and 976.1 of the California Rules of Court only part V and the Disposition are certified for publication.

COUNSEL

Dan Mrotek, under appointment by the Court of Appeal, for Defendant and Appellant and Petitioner.

John K. Van de Kamp, Attorney General, Robert F. Katz and Thomas L. Willhite, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

JOHNSON, J.—

FACTS AND PROCEEDINGS BELOW*

. . . . . . . . . . . . . . . . . . . . . . .

I.–IV.*

. . . . . . . . . . . . . . . . . . . . . . .

V. ALTHOUGH THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON THE ATTEMPTED MURDER COUNT, THE ERROR WAS HARMLESS

1. *The Trial Court Erred by Giving Conflicting Instructions to the Jury.*

▮ Bounds argues the trial court erred in instructing the jury regarding proof of the crime of attempted murder since these instructions included

---

*See footnote, *ante*, page 802.

reference to the concept of implied malice. Bounds argues this error was prejudicial.

"In instructing upon the crime of attempt to commit murder, there should never be any reference whatsoever to implied malice. Nothing less than a specific intent to kill must be found before a defendant can be convicted of attempt to commit murder, and the instructions in this respect should be lean and unequivocal in explaining to the jury that only a specific intent to kill will do." (*People* v. *Santascoy* (1984) 153 Cal.App.3d 909, 918 [200 Cal.Rptr. 709]; accord *People* v. *Murtishaw* (1981) 29 Cal.3d 733, 762-764 [175 Cal.Rptr. 738, 631 P.2d 446], cert. den. (1982) 455 U.S. 922 [71 L.Ed.2d 464, 102 S.Ct. 1280]; *People* v. *Collie* (1981) 30 Cal.3d 43, 61-62 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776].)

In the case at bar, in instructing the jury relevant to this count, the court first correctly gave CALJIC No. 3.31 as follows: "In each of the crimes charged in counts I [attempted murder], II, III, and IX, of the information, . . ., there must exist a union or joint operation of act or conduct and a certain specific intent in the mind of the perpetrator. And unless that specific intent exists, the crime to which it relates is not committed. The specific intent required is included in definitions of the crimes charged. The crime of attempted murder requires the specific intent to kill another human being . . . ." The court then gave modified versions of CALJIC Nos. 8.10, 8.11, 8.20, 8.21, 8.71, and 6.00. As the court stated in part: "The defendant is charged in count I of the information with commission of the crime of attempted murder . . . . The crime of murder is the unlawful killing of a human being with malice aforethought. In order to prove the commission of the crime of murder, each of the following elements must be proved: One, that a human being was killed, that the killing was unlawful, and that the killing was done with malice aforethought . . . . [¶] *Malice is implied when the killing is the direct cause and result of the perpetration or attempt to perpetrate a felony, inherently dangerous to human life.* Robbery and burglary are felonies which are inherently dangerous to human life . . . . [¶] If you find that the attempted killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of a deliberation and premeditation, so that it must have been formed on pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder in the first degree . . . . [¶] *The unlawful killing of a human being, whether intentional, unintentional, or accidental, which occurs as a result of the commission of or attempt to commit the crime of burglary or robbery, and where there was in the mind of the perpetrator the specific intent to commit such crime is murder of the first degree* . . . . [¶] If you are convinced beyond a reasonable doubt that the crime of attempted murder has been committed by a

defendant, but you have a reasonable doubt whether such attempted murder was of the first or second degree, you must give the defendant the benefit of that doubt and return the verdict fixing the attempted murder as of the second degree. [¶] Attempt to commit a crime consists of two elements, namely, a specific intent to commit the crime and a direct but ineffectual act done toward its commission." (Italics added.)

█ Taken as a whole, the instructions on attempted murder were confusing and may have been interpreted in such a way that the jury did not believe it necessary to reach the issue whether Bounds had the specific intent to kill. It was error for the court to instruct on implied malice in this setting. The People argue, however, the instructions made it clear the charged crime was attempted murder and required a finding of the specific intent to commit murder. The People argue the instructions on felony murder were not given as a substitute for the intent to kill requirement but were given as a means for the jury to determine the degree of the murder Bounds attempted to commit, such determination coming after they found he committed the crime of attempted murder. Although this may have been the intended purpose in giving these instructions, this purpose is not at all clear from a reading of the instructions as a whole.[9] The court erred in so instructing the jury.

### 2. *Standard of Prejudice*

In *People* v. *Murtishaw, supra,* 29 Cal.3d at pp. 763-764, the Supreme Court applied, without discussion, the *Watson* test in determining whether misinstruction on the intent requirement for attempted murder was prejudicial error. Subsequent Supreme Court decisions also applied this standard, again without any discussion concerning why it applied this standard or rejected alternative standards. (See *People* v. *Ramos* (1982) 30 Cal.3d 555, 584 [180 Cal.Rptr. 266, 639 P.2d 908], revd. on other grounds in *California* v. *Ramos* (1983) 463 U.S. 992 [77 L.Ed.2d 1171, 103 S.Ct. 3446]; *People* v. *Johnson* (1981) 30 Cal.3d 444, 448-449 [179 Cal.Rptr. 209, 637 P.2d 676].) In another Supreme Court case, *People* v. *Collie, supra,* 30 Cal.3d 43, 62, it is unclear whether the court was applying a *Watson* or *Chapman* standard in reversing the decision for *Murtishaw* error. (See *People* v. *Acero* (1984) 161 Cal.App.3d 217, 229 [208 Cal.Rptr. 565].) In light of recent United States Supreme Court and California Supreme Court de-

---

[9]The trial court also gave a second degree murder instruction stating it is "the unlawful killing of a human being as the direct cause and result of an intentional act involving a high degree of probability that it will result in death, which act is done for a base and anti-social purpose, and with wanton disregard for human life." This instruction served no purpose but to potentially confuse the jury. Since the jury had to find a specific intent to kill in order to find Bounds guilty of attempted murder, this instruction had no relevancy either to jury deliberations in assessing whether Bounds was guilty on this charge or to jury deliberations when subsequently affixing the degree of the attempt.

cisions, however, it is highly questionable whether *Watson* continues to be the appropriate standard.

In *People* v. *Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826], cert. den. (1985) — U.S. — [84 L.Ed.2d 366, 105 S.Ct. 1229], the California Supreme Court addressed, in part, the test of prejudice applicable when a trial court fails to instruct a jury that proof of intent to kill or to aid a killing is essential to a finding of felony-murder special circumstance under the 1978 death penalty initiative. In addressing this issue the court looked solely to federal precedent. The key federal case examined by the court was *Sandstrom* v. *Montana* (1979) 442 U.S. 510 [61 L.Ed.2d 39, 99 S.Ct. 2450]. In that case, the defendant was found guilty of deliberate homicide—criminal homicide that is committed purposely or knowingly. In instructing the jury, the trial court gave the jury the following instruction: "The law presumes that a person intends the ordinary consequences of his voluntary acts." The Supreme Court held this instruction violated the defendant's due process rights since it operated either as a conclusive presumption on the issue of the defendant's intent or as a burden-shifting presumption, shifting the burden of persuasion to the defendant to prove he did not have the requisite intent. (*Id.*, 442 U.S. at p. 524 [61 L.Ed.2d at p. 51].) As such, the instruction improperly relieved the state of the burden of proving beyond a reasonable doubt that the defendant had the requisite intent.

The *Garcia* court in discussing *Sandstrom* recognized the reasoning of that case, and other Supreme Court decisions which have addressed the same issue, extends beyond the factual context of these cases. As the court stated: "That reasoning *would invalidate any instruction* or failure to instruct which would permit the state to circumvent the requirement that it prove every fact necessary for conviction beyond a reasonable doubt." (Italics added.) (*People* v. *Garcia, supra,* 36 Cal.3d at p. 551.) Under this interpretation, the instructional error committed in the case at bar would certainly also appear to fall within the *Sandstrom* rationale and as such constitute a violation of the defendant's federal due process rights.

This becomes even more apparent after examining a very recent United States Supreme Court case, *Francis* v. *Franklin* (1985) — U.S. — [85 L.Ed.2d 344, 105 S.Ct. 1965]. In this case, the Supreme Court reaffirmed the principles established in *Sandstrom*—an instruction which could be interpreted by a juror to create a mandatory presumption shifting to the defendant the burden of persuasion on the element of intent is constitutionally infirm. Importantly, the court reached the result even though other proper instructions on the issue of intent were given. ■ As the court stated: "The Court today holds that contradictory instructions as to intent—one of

which imparts to the jury an unconstitutional understanding of the allocation of burdens of persuasion—create a reasonable likelihood that a juror understood the instructions in an unconstitutional manner, unless other language in the charge explains the infirm language sufficiently to eliminate this possibility. If such a reasonable possibility of an unconstitutional understanding exists, 'we have no way of knowing that [the defendant] was not convicted on the basis of the unconstitutional instruction.' *Sandstrom,* 442 U.S., at 526." (*Francis* v. *Franklin, supra,* — U.S. at pp. ——, fn. 8 [85 L.Ed.2d at pp. 358-359, 105 S.Ct. at pp. 1075-1076].)

■ Although the challenged instructions given in the case at bar are factually dissimilar to those in *Sandstrom* and *Franklin,* there can be little doubt, especially in light of *Garcia,* the California Supreme Court would find the reasoning of these cases directly applicable in the current context. As such, we conclude the contradictory instructions given in the case at bar violated the defendant's due process rights under the Fourteenth Amendment.

■ Since the error in the case at bar is of federal constitutional dimensions, the standard of error is governed by federal law. (*Chapman* v. *California* (1967) 386 U.S. 18, 21 [17 L.Ed.2d 705, 708, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *People* v. *Taylor* (1982) 31 Cal.3d 488, 499 [183 Cal.Rptr. 64, 645 P.2d 115]; *People* v. *Coffey* (1967) 67 Cal.2d 204, 219 [60 Cal.Rptr. 457, 430 P.2d 15].) As such, the *Watson* standard is not the appropriate standard to use in assessing the nature of the error. (*Ibid.*)

The Supreme Court in *Sandstrom* and *Franklin* did not resolve the issue of whether the erroneous instruction given in those cases could ever be harmless, i.e., whether the error was prejudicial per se or whether *Chapman* was the applicable test.[10] Although we believe per se reversal may well be the appropriate standard, we are unwilling to adopt this standard in the case at bar since the United State Supreme Court has not as of yet determined

---

[10]The Supreme Court split on this issue in *Connecticut* v. *Johnson* (1983) 460 U.S. 73 [74 L.Ed.2d 823, 103 S.Ct. 969]. Four justices found such error was prejudicial per se with two minor exceptions. Four justices adopted *Chapman* as the appropriate standard since the presumption did not remove the issue of intent from the jury's consideration. One justice did not reach this issue. It should also be noted, in *Franklin,* the court also discussed a third possible test for assessing error, a test which was used by the Court of Appeals in the *Franklin* case—whether the evidence of guilt was so overwhelming the error could not have contributed to the jury's decision to convict. (*Francis* v. *Franklin, supra,* — U.S. at p. — [85 L.Ed.2d at pp. 360-361, 105 S.Ct. at p. 1977].)

the appropriate standard and the California Supreme Court has not recently addressed this issue in this context.[11]

■    Pursuant to *Chapman,* "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (*Chapman* v. *California, supra,* 386 U.S. at p. 24 [17 L.Ed.2d at pp. 710-711].)   ■    Thus, we must determine, reviewing the evidence in its entirety, whether the jury, beyond a reasonable doubt, would have found Bounds had the specific intent to kill Mr. C. if the erroneous instructions had not been given and the correct ones had. (See *People* v. *Townsend* (1971) 20 Cal.App.3d 919, 925 [98 Cal.Rptr. 8]; *People* v. *Turner* (1971) 22 Cal.App.3d 174, 184 [99 Cal.Rptr. 186]; *People* v. *Robinson* (1970) 6 Cal.App.3d 448, 453 [86 Cal.Rptr. 56], cert. den. (1970) 400 U.S. 907 [27 L.Ed.2d 145, 91 S.Ct. 149].) In effect, this means we must ask two questions: first, given the instructions the jurors actually heard, could a reasonable juror have convicted the defendant of attempted murder without finding he had a specific intent to kill. If the answer to this question is affirmative, we must ask whether a reasonable juror, properly instructed on the issue of intent and construing the evidence on this issue most favorably to the defendant, *could* entertain a reasonable doubt about whether the defendant had a specific intent to kill. We already have explained why the answer to the first question is yes and thus move on to the second. Based on our review of the evidence explained below, we conclude the answer is no and thus find the error to be harmless even under the *Chapman* standard.

In the case at bar, the intruder from the outset repeatedly threatened to kill Mr. C. and Ms. H., initially with a gun and later also with a knife. After the intruder had been in the condominium for about an hour, he forced Mr. C. to go into a spare bedroom. He forced him to lie face down on the bed and bound his hands to his feet. He then slit Mr. C.'s throat with a knife and left him in that position while he committed the sexual offenses with Ms. H. Later, upon realizing Ms. H. had escaped, the intruder returned to the room where Mr. C. was bound, and with a different knife in

---

[11]In *Garcia,* the court concluded, after analyzing *Connecticut* v. *Johnson,* all eight United States Supreme Court justices who addressed the issue of prejudice in that case would agree a jury instruction which takes an issue completely from the jury is reversible per se with minor exceptions. (*People* v. *Garcia, supra,* 36 Cal.3d at p. 554.) As such, the *Garcia* court concluded the United States Supreme Court would apply this standard in the case before it since the issue of intent was removed from the jury, i.e., the jury had not been instructed that proof of intent to kill or to aid a killing was required. The *Garcia* court thus found this error reversible per se with limited exceptions. As a matter of logic, we cannot see why the error committed in the case at bar should be treated differently. Although in the case at bar, conflicting instructions were given, only some of which had the effect of taking the issue of intent from the jury, a reasonable possibility certainly exists that the issue of intent was not addressed by some of the jurors.

his hand, plunged the knife into Mr. C.'s neck. Mr. C.'s left vertebral artery was severed and his jugular vein was lacerated. After he plunged the knife into Mr. C.'s neck, the intruder picked Mr. C. up by the shoulders and threw him across the room, leaving the knife implanted in Mr. C.'s neck. It is hard to think of a more compelling set of facts establishing the requisite intent. As such, we are forced to conclude had the jury been properly instructed, no reasonable juror could have reasonably doubted the defendant possessed the specific intent to kill.[12] ■■ ■■■■ Therefore, the trial court's error in misinstructing the jury does not require reversal.[13]

VI.–XI.*

. . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment of conviction is modified in that: (1) Bounds shall serve only two additional periods of imprisonment pursuant to section 12022.5; and (2) the true findings on the allegations of two prior separate prison terms having been set aside, Bounds' sentence is reduced by an additional two years. In all other respects, the judgment is affirmed.

Thompson, J., concurred.

**LILLIE, P. J.,** Concurring and Dissenting.—I concur in all portions of the majority opinion affirming the judgment except that portion in paragraph V holding that the *Chapman* standard of prejudice (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065]) applies to the instructional error in relation to count I (attempted first degree murder), from which I respectfully dissent. While I agree that error occurred because of conflicting jury instructions (*People* v. *Ramos* (1982)

---

[12]Although we recognize Bounds in his confession denied any intent to kill Mr. C., we do not believe this self-serving statement, so inconsistent with the defendant's other statements and actions, is worthy of consideration. It certainly is not enough to cause a reasonable juror to entertain a reasonable doubt on the intent issue.

[13]Bounds also argues the trial court erred in imposing punishment for attempted murder and robbery since the latter might have been the underlying felony used in applying the felony-murder rule to the alleged attempted murder of Mr. C. Multiple punishment would violate section 654. Although members of the jury may have found Bounds guilty of attempted murder while relying on the felony-murder instructions erroneously given by the court, as stated above, the evidence was such that had the jury been properly instructed it would have found Bounds had the specific intent to kill. Thus, the robbery plays no role in Bounds' punishment for attempted murder and section 654 is not implicated.

*See footnote, *ante,* page 802.

30 Cal.3d 553, 582 [180 Cal.Rptr. 266, 639 P.2d 908]; *People* v. *Johnson* (1981) 30 Cal.3d 444, 448-449 [179 Cal.Rptr. 209, 637 P.2d 676]; *People* v. *Collie* (1981) 30 Cal.3d 43, 63 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776]; *People* v. *Murtishaw* (1981) 29 Cal.3d 733, 763 [175 Cal.Rptr. 738, 631 P.2d 446]), I would hold that the *Watson* test (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]) is the appropriate standard in reviewing this kind of error. However, I would affirm the conviction of attempted first degree murder under either the *Chapman* or the *Watson* test.

None of the California Supreme Court cases dealing with *Murtishaw* error (*People* v. *Murtishaw, supra,* 29 Cal.3d 733) suggests that other than the *Watson* test of prejudice applies. *Murtishaw* is the first in a series of such cases dealing with error arising out of instructions defining implied malice (CALJIC No. 8.11) and felony murder, there in the context of a charge of assault with intent to commit murder. The court held that the concept of felony murder is inapplicable to such crime, as is "the concept of implied malice, insofar as it permits a conviction without proof of intent to kill . . . ." (p. 764), but that the erroneous instructions were not prejudicial, for "in light of the evidence presented it is virtually certain that the jury found defendant intended to kill these victims"; and applied the test of prejudice established in *People* v. *Watson, supra,* 46 Cal.2d 818, 836, concluding it was not "reasonably probable that a result more favorable to defendant would have been reached in the absence of error . . . ." (P. 765.)

In *People* v. *Collie, supra,* 30 Cal.3d 43, defendant assaulted his estranged wife, bound, gagged and locked her in her bedroom, then left turning on the gas burner and leaving a lighted candle surrounded by combustibles; his daughter was asleep in her bedroom. The court found error in that the jury was instructed that it need not find a specific intent to kill in order to convict of attempted murder, and held "The instructional error was harmless regarding the conviction for the attempted first degree murder of Mrs. Collie, because the jury was properly instructed that the verdict required findings of premeditation and deliberation, which entail a specific intent to kill. But the verdict of guilt on the attempted second degree murder charge was not insulated from error. Although the jury was properly instructed that a specific intent to kill would satisfy the intent requirement of an attempted second degree murder charge, it is impossible to determine whether the verdict rested on that ground, for which there was little evidence, or on the impermissible basis of defendant's wanton conduct, which was more clearly supported by the record. Because we cannot know on which instruction the jury relied, the conviction for attempted second degree murder of defendant's daughter must be reversed. [Citations.]" (P. 62.)

It is true, as pointed out by the majority opinion, that the court in *Collie* did not discuss the standard of prejudice it employed; but contrary to the view of my colleagues that it is "unclear" whether the *Collie* court applied the *Watson* or the *Chapman* standard, I find no such lack of clarity in *Collie.* First, absence of discussion concerning the standard being used in *Collie* suggests to me, in light of the court's reliance on *Murtishaw* to point up the instructional error, that there was no necessity for such discussion for, as in *Murtishaw,* it adopted the *Watson* standard. Second, it seems to me that had the *Chapman* standard been used in *Collie,* the court would have discussed the constitutional dimensions of the error, instead, it merely found the error to be harmless in the one conviction and reversible in the other. Third, had the *Collie* court employed any standard other than *Watson,* surely it would have surfaced in the next like case of *People* v. *Johnson, supra,* 30 Cal.3d 444, decided two months later, but it did not; and the court in *Johnson,* although reversing the conviction of attempted murder, quoted from *Murtishaw,* held it was error to instruct on implied malice (CALJIC No. 8.11) and expressly applied the *Watson* test of prejudice. (Pp. 448-449.)

One month later, the court decided *People* v. *Ramos, supra,* 30 Cal.3d 553, which also applied the *Watson* test. After robbing a fast food restaurant, defendant shot and killed one employee and wounded another; he was convicted of robbery, murder and attempted murder. Although the jury was instructed on the elements of attempt to commit a crime, it was also instructed on implied malice and felony murder; but the court neglected to instruct that the crime of attempted murder requires a specific intent to kill. Even so, following *Murtishaw,* the court found the error not to be prejudicial and, applying *Watson,* affirmed the conviction. "The prosecution case at the guilt phase strongly indicated that appellant attempted to kill the two witnesses to the robbery. Intent was inferable from the circumstances of the crime. Since appellant presented no evidence at the guilt phase, there was no substantial basis from which the jury would conclude otherwise." (P. 584, fn. 13.)

Likewise applying *Watson* are Court of Appeal decisions, *People* v. *Santascoy* (1984) 153 Cal.App.3d 909, 919 [200 Cal.Rptr. 709] and *People* v. *Young* (1981) 120 Cal.App.3d 683, 693 [175 Cal.Rptr. 1]. A divided court in *People* v. *Acero* (1984) 161 Cal.App.3d 217 [208 Cal.Rptr. 565], relied upon by appellant herein, after holding *Beeman* (*People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318]) error compelled a mandatory reversal, proceeded to hold the error in defining implied malice for the jury and failing to instruct on specific intent to kill in an attempted murder charge, to be reversible per se. The court relied upon *People* v. *Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826], which

held the error for failure to instruct on the intent required for a finding of a felony-murder special circumstance, to be reversible per se. Said the *Acero* court, "Even assuming the *Watson* or *Chapman* standard is the appropriate test of prejudice, reversal of Acero's conviction is nonetheless required. Acero's jury was instructed on both express malice, for which there was a paucity of evidence in the record, and implied malice, which was more clearly supported in the record. We cannot know whether the jury convicted him of attempted murder under the former correct instruction or the latter, incorrect instruction. [Citation.]" (P. 229.) Said the dissenting Justice, after concluding the case was not subject to the *Garcia-Carlos* standard (reversible per se), "As to the *Murtishaw* error, the same general analysis applies to the absence of a specific intent to kill instruction, since the jury was properly instructed on express malice and there was no reasonable basis for concluding the jury found otherwise than that Acero had the specific intent to kill as he pummeled and stabbed the victim with the rifle butt," citing *Ramos* and *Murtishaw,* and that he would affirm the judgment. (P. 234.)

Relying upon *People* v. *Garcia, supra,* 36 Cal.3d 539 and United States Supreme Court cases cited therein, and adopting the *Acero* rationale, my colleagues depart from the line of California Supreme Court cases applying the *Watson* standard of prejudice to *Murtishaw* instructional error in favor of the *Chapman* standard applicable to errors of federal constitutional dimensions. In my view, the majority herein having relied upon *Garcia* and the *Acero* rationale is bound to hold such error to be no less than reversible per se. Further, I am unable to equate the error in the instant case, in which the jury was properly and fully instructed on the necessity for a finding of specific intent to kill in an attempted murder conviction, with the error in *Garcia* and *Acero* involving a total failure to instruct on the element of intent to kill, or the giving of any instruction which completely removes the issue of intent from the jury. I find no similarity whatever between the instant case and those relied upon by the majority.

Because *People* v. *Garcia, supra,* 36 Cal.3d 539, was a pre-*Carlos* (*Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862]) case, the court did not instruct that a felony-murder special circumstance requires an intent to kill or to aid in a killing. Thus, applying *Carlos* retroactively (p. 550), the Supreme Court then dealt with the appropriate standard of prejudice and held the error to be reversible per se because the failure to instruct on specific intent to kill removed the issue of intent from the trier of fact and deprived defendant of due process of law in violation of the Fourteenth Amendment. (P. 551.) Relying on a series of United States Supreme Court decisions concluding with *Sandstrom* v. *Montana* (1979) 442 U.S. 510 [61 L.Ed.2d 39, 99 S.Ct. 2450] involving the consti-

tutionality of state practices relating to presumptions and burdens of proof, the *Garcia* court held the reasoning in those cases would invalidate any instruction or failure to instruct which would permit the state to circumvent the requirement that it prove every fact necessary for conviction beyond a reasonable doubt, and the same consequence should attend failure to instruct on an element of a special circumstance. (P. 551.) It concluded that, absent exceptional considerations not therein found, the error in failing to instruct that proof of intent to kill or aid a killing is essential to a finding of a felony-murder special circumstance, was reversible per se for it completely eliminated the issue of intent to kill from the consideration of the jury.[1] (Pp. 556-557.)

There is in the instant case no failure to instruct on the requisite intent, as in *Garcia* and *Acero,* in fact, the jury was fully instructed that a specific intent to kill is a necessary element of attempted murder and, as in *Collie* (which affirmed the attempted first degree murder of Mrs. Collie), was additionally instructed that the verdict required findings of premeditation and deliberation, which entail a specific intent to kill. Although instructional error occurred here, it is virtually certain in light of the evidence, the instructions, the defenses and counsels' closing jury arguments, that the issue of specific intent to kill in no manner was removed from the jury's consideration. The jury simply could not have convicted Bounds of attempted first degree murder without finding that he possessed the specific intent to kill Mr. C.

Bounds sought an acquittal on the defenses of mistaken identity, arguing the weight to be given the identification testimony, and alibi, relying on his three alibi witnesses; and asked the jury to reject his confession on his own testimony that he did not confess and did not say any of the things about the crime attributed to him by Detective Gallon. The record establishes that the prosecutor presented to the jury the issue of intent, told the jurors that specific intent to kill was an essential element of the charge of attempted murder which the prosecution had to prove beyond a reasonable doubt, and argued the evidence showing defendant had a specific intent to kill Mr. C. However, the defense relied solely on mistaken identity and alibi, and neither relied upon nor argued lack of intent to kill. Defendant chose to ignore the issue inasmuch as he claimed he was not the assailant and was elsewhere

[1] The Supreme Court in a series of cases subsequent to *People v. Garcia, supra,* 36 Cal.3d 539, has set aside special circumstance findings for failure to instruct the jury that intent to kill is an essential element of a finding of special circumstance based on felony murder. (*People v. Hayes* (1985) 38 Cal.3d 780 [214 Cal.Rptr. 652, 699 P.2d 1259]; *People v. Boyd* (1985) 38 Cal.3d 762 [215 Cal.Rptr. 1, 700 P.2d 782]; *People v. Anderson* (1985) 38 Cal.3d 58 [210 Cal.Rptr. 777, 694 P.2d 1149]; *People v. Armendariz* (1984) 37 Cal.3d 573 [209 Cal.Rptr. 664, 693 P.2d 243]; *People v. Ramos, supra,* 37 Cal.3d 136; *People v. Whitt* (1984) 36 Cal.3d 724 [205 Cal.Rptr. 810, 685 P.2d 1161].)

at the time the crimes were committed. The only time defense counsel even alluded to the issue of intent to kill was a passing reference made solely in the context of what the assailant had said to one of the victims,[2] "It is also very interesting about the statements that the assailant made. Now, I had Mr. Bounds testify to you about some of his background in jail and so forth, because I think that it really repudiates what this assailant said. Now, obviously, when this assailant came in, I don't think that he had any intent on getting caught period. *May be [he] did intend to murder both of these people before he left, I don't know.* But it would make no sense for the assailant, with his lackadaisical attitude about hiding his identity, to just make up stories about how long he had been in jail and all that sort of thing."[3]; (italics added).

In addition to CALJIC Nos. 8.11, 8.21 and 8.31, the court gave the following instructions under which the jury simply could not have found Bounds guilty of attempted murder without finding he had the intent to kill Mr. C. The jury was first informed that one of the charged crimes (count I) was attempted murder (CALJIC Nos. 3.31, 8.10). Inasmuch as the validity of the confession was in issue, the court gave CALJIC No. 2.70, and instructed on the defenses of mistaken identity (CALJIC No. 2.91) and alibi (CALJIC No. 4.50). Then the court instructed that in the crime charged in count I, attempted murder, "there must exist a union or joint operation of act or conduct and a certain specific intent in the mind of the perpetrator and unless such specific intent exists the crime to which it relates is not committed" (CALJIC No. 3.31); that an attempt to commit a crime consists of two elements, one of which is "a specific intent to commit the crime . . . ." (CALJIC No. 6.00); that "The crime of attempted murder requires the specific intent to kill another human being" (CALJIC No. 3.31); that the intent with which an act is done is shown by a statement of his intent made by the defendant and by the circumstances attending the act (CALJIC No. 3.34); that defendant is charged with the crime of attempted murder, and one of the elements of murder which must be proved is "3. That the killing was done with malice aforethought" (CALJIC No. 8.10); that "Malice is express when there is manifested an intention unlawfully to kill a human being" (CALJIC No. 8.11); and that murder in the first degree is a deliberate and premeditated killing, and "If you find that the attempted killing was preceded and accompanied by a clear, deliberate intent on the

[2]While tying up one of the victims her assailant told her he was twenty-eight years old, had been in jail for seven years, was on parole, and had just gotten out three or six months earlier; that he was not going back, had done this before, knew what he was doing, and would kill them both if they made any noises he did not like.

[3]It is my view, as obviously it was of the majority in *People* v. *Acero, supra,* 161 Cal.App.3d 217, 225-226, that, indeed, jury arguments assist in assessing the nature of the error involved.

part of the defendant to kill . . . it is murder of the first degree." (CALJIC No. 8.20.)

The foregoing instructions made it very clear to the jury that the crime charged in count I was attempted murder, and that to convict defendant it had to find that he had the specific intent to kill. I cannot agree with the majority opinion that the instructions given violated defendant's due process rights under the Fourteenth Amendment. The instructions taken as a whole, the evidence, the defenses raised and counsel's closing jury arguments compel my conclusion that the issue of specific intent to kill was not removed from the consideration of the jury—that the state was required to, and did, prove beyond a reasonable doubt every fact necessary to convict of attempted first degree murder; there was no failure to instruct on the requisite intent, as in *People* v. *Garcia, supra,* 36 Cal.3d 539 and *People* v. *Acero, supra,* 161 Cal.App.3d 217, in fact, the court repeatedly instructed the jury it had to find specific intent to kill before it could convict defendant of attempted murder; the instructions did not permit the jury to find guilt on count I (attempted murder) without proof beyond a reasonable doubt of intent to kill; the jury was instructed on every element of attempted murder; no element of the crime of attempted murder was removed from the consideration of the jury; and no one was misled that it was unnecessary to prove specific intent to kill. I am convinced beyond any doubt at all that the jury, after rejecting Bound's defenses of mistaken identity and alibi, could not have convicted him of attempted murder without finding he intended to kill Mr. C. before leaving the premises. Following California Supreme Court precedent dealing with *Murtishaw* instructional error, it is my conclusion that the standard established in *People* v. *Watson, supra,* 46 Cal.2d 818, 836 is the appropriate standard to use in reviewing the nature of the error.

I find the error to be harmless under whatever standard is employed—the *Chapman* test or the *Watson* test—and would affirm the conviction of attempted first degree murder (count I) under either standard. In all other respects I concur in the majority opinion.